DONALD M. JACOBSON, DONALD )
KARNER and ROBERT VALLEYFIELD, )
                                     )
     Plaintiffs, )
                                      )     No. 01 C 4814
         v. )
                                        )     Judge Ruben Castillo
CITY OF CHICAGO, POLICEMEN'S )
ANNUITY AND BENEFIT FUND OF )
CHICAGO, FIREMEN'S ANNUITY AND )
BENEFIT FUND OF CHICAGO, MUNICIPAL )
EMPLOYEES', OFFICERS' AND OFFICIALS')
ANNUITY AND BENEFIT FUND and )
LABORERS' AND RETIREMENT BOARD )
EMPLOYEES' ANNUITY AND BENEFIT )
FUND, )
                                      )
     Defendants. )

DOCKETED

NOV 2 2 2002

## MEMORANDUM OPINION AND ORDER

This case arises from a long-standing dispute among the City of Chicago ("City"),

participants in the City's annuitant healthcare plans and four of the City's annuitant and benefit

funds. In the instant dispute, annuitants Donald M. Jacobson, Donald Karner and Robert

Valleyfield sue the City, the Policemen's Annuity and Benefit Fund, the Firemen's Annuity and

Benefit Fund, the Municipal Employees', Officers' and Officials' Annuity and Benefit Fund and

the Laborers' and Retirement Board Employees' Annuity and Benefit Fund (collectively

"Funds"). Plaintiffs' eight-count complaint alleges two federal claims against both the City and

the Funds: (1) a 42 U.S.C. § 1983 claim for deprivation of their Fourteenth Amendment property

and due process rights; and (2) impairment of contract under Article I, Section 10 of the United

States Constitution. Plaintiffs also allege state law claims for breach of contract, several state



constitutional claims as well as a claim against the City under the Illinois Consumer Fraud Act. Currently before the Court are the City's and the Funds' motions to dismiss pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). The City and the Funds provide a host of arguments for dismissal of this suit. The Court has carefully considered all of the parties' arguments, and although we have reservations as to the propriety of this Court's jurisdiction over some of Plaintiffs' claims, we will not bar them in their entirety under the *Rooker-Feldman* doctrine. Rather, the Court opines that the more just and efficient result is a stay of this litigation pending resolution of the *Korshak* litigation in the Circuit Court of Cook County. *City of Chi. v. Korshak*, No. 01 CH 4962, previously 87 CH 10134 (Cir. Ct. of Cook County). As such, the City's and the Funds' motions to dismiss are denied. (R. 41-1; 47-1.)

## RELEVANT FACTS

### I. Litigation History

The roots of the instant dispute extend back to 1987, when the City sued the Funds to require them to obtain healthcare coverage for annuitants and to pay restitution for monies the City had expended on annuitants' healthcare benefits since 1982. *City of Chi. v. Korshak*, No. 87 CH 10134 (Cir. Ct. of Cook County). The Funds, in turn, filed counterclaims and sought an injunction to prevent termination of the annuitants' coverage. A group of annuitants then intervened in the suit to protect the interests of participants in the City's healthcare plan, and was certified as representatives of a class of annuitants who had retired on or before December 31, 1987 ("*Korshak* class"). Although the Circuit Court dismissed the City's complaint, the case proceeded to a bench trial on the Funds' counterclaims in June 1988. Before the Circuit Court issued its ruling, however, the City and the Funds reached a settlement agreement, in which, *inter*

2

*alia*, the City agreed to pay at least 50% of the cost of annuitants' health care coverage. The City

and the Funds also agreed to support legislation to implement the settlement agreement. The

resulting legislation, Public Act 86-273 (effective August 23, 1989), provided that the City's

obligations would terminate at the end of 1997, and that in the event that a permanent solution

was not reached by 1998, the annuitants would be permitted to reassert any rights they claimed at

the beginning of the 1988 bench trial. Over the objections of the *Korshak* class, the Circuit Court

approved the settlement agreement, ruling that it was in the best interest of the class because it

eliminated the risk that the annuitants would have to pay the entire cost of their health benefits or

would be unable to obtain coverage. *City of Chi. v. Korshak*, 565 N.E.2d 68, 71 (Ill. App. Ct.

1990). The Illinois Appellate Court affirmed the Circuit Court's approval of the settlement

agreement. *Id., cert. denied*, 575 N.E.2d 912 (Ill. 1991), *cert. denied*, 503 U.S. 918 (1992).

Many developments related to the *Korshak* litigation occurred throughout the 1990s.

First, in 1990 the Retired Chicago Police Association ("RCPA"), represented by *Korshak* class

counsel, filed a suit in federal court challenging the *Korshak* settlement on behalf of a class of

annuitants who began participating in the City's health care plan after December 31, 1987 and

before August 23, 1989. *Retired Chi. Police Ass'n*, 1414 F.R.D. 477 (N.D. Ill. 1992). That

litigation ended after two rounds of appeals in which the Seventh Circuit upheld the district

court's denial of class certification and denial of a group of annuitants' motion to intervene, as

well as the district court's dismissal of the case on remand for the RCPA's lack of associational

standing. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 594-99 (7th Cir. 1993); *Retired

Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 863-67 (7th Cir. 1996). Second, the Illinois

legislature passed Public Act 90-32 (effective June 1997), which continued annuitants'

3

healthcare benefits for another five years or through June 30, 2002. Also, in April 1998 the City notified the annuitants of substantial rate increases for their plans.

Upon the expiration of the ten-year *Korshak* settlement period in June 1998, the *Korshak* class petitioned the Circuit Court to reinstate the case and enlarge the *Korshak* class to include the putative federal class in this case. The Circuit Court denied reinstatement, ruling that it had no jurisdiction over the dispute because a permanent solution had been reached. *City of Chi. v. Korshak*, No. 87 CH 10134 (Cir. Ct. of Cook County Sept. 1, 1998). The Appellate Court reversed the Circuit Court's decision—holding that the 1997 Amendments to the Pension Code, which continued the City's obligations only through 2002, was not a permanent solution—and remanded the case to the Circuit Court. *City of Chi. v. Korshak*, No. 1-98-3465 and 1-98-3667 (Ill. App. Ct. June 15, 2000). The Appellate Court affirmed, however, the denial of the proposed intervenors' petition because they failed to demonstrate how their interests were any different from the annuitants who had already intervened (*i.e.* the *Korshak* class). *Id.* at 8.

During the time when the post-settlement period jurisdictional issues were being decided by the Illinois courts, the *Jacobson* plaintiffs sought relief in this Court, which dismissed the case pending resolution of the *Korshak* appeal. *Jacobson, et al. v. Policemen's Annuity, et al.*, No. 99 C 0627 (N.D. Ill. Feb. 5, 1999). The *Jacobson* plaintiffs returned to this Court in 2001 and filed their initial complaint on June 25, 2001. Thus, currently there are related actions proceeding in both this Court and in the Circuit Court.

## II. Pending State Court Action

In May 2002 the plaintiffs in the *Korshak* litigation filed an amended class action complaint. The complaint includes eleven counts, primarily based on the annuitants' contention

4

that they have a contract or property right to fixed-rate subsidized healthcare plans:

(1) impairment of contract rights violating Article 13, Section 5 of the 1970 Illinois Constitution; (2) common law breach of contract; (3) common law estoppel; (4) violation of the Illinois Consumer Fraud Act; (5) ex post facto impairment of contract violating Article 1, Section 16 of the 1970 Illinois Constitution; (6) deprivation of property rights violating the Fourteenth Amendment, actionable under 42 U.S.C. § 1983; (7) impairment of contract right violating Article I, Section 10, Clause 1 of the United States Constitution; (8) violations of the procedural and substantive due process protections of the Fourteenth Amendment; (9) violation of the due process protections of Article 1, Section 2 of the 1970 Illinois Constitution; (10) a taking violating Article 1, Section 15 of the Illinois Constitution; and (11) special legislation violating Article 4, Section 13 of the 1970 Illinois Constitution. (R. 42, App., Ex. A, Am. Compl.)

After the 2000 Appellate Court remand and despite the Appellate Court's ruling that the Circuit Court did not abuse its discretion in denying the intervenors' petition, the Circuit Court in 2001 ruled that the *Korshak* class could be enlarged to include annuitants who retired after December 31, 1987. The *Korshak* plaintiffs withdrew their motion to amend, however, when the Circuit Court denied the plaintiffs' request to extend an injunction to any annuitant beyond the *Korshak* class. The case was set for a hearing on May 30, 2002 on the parties' cross-motion for summary judgment.

**III. Pending Federal Court Action**

On May 15, 2002, *Korshak* class counsel, representing a putative class of annuitants who retired or were vested in their retirement benefits after December 31, 1987 (the cut-off date for the *Korshak* class) and on or before August 23, 1989 (the date Public Act 86-273 became

5

effective), filed a second amended complaint in this Court. As in the *Korshak* amended complaint, the *Jacobson* complaint primarily is based primarily on the plaintiffs' asserted contract and property rights in a fixed-rate subsidized healthcare plan. The complaint includes eight counts: (1) a 42 U.S.C. § 1983 claim for denial of Fourteenth Amendment property and due process rights; (2) common law breach of contract; (3) impairment of contract rights violating Article 13, Section 5 of the 1970 Illinois Constitution; (4) impairment of contract rights violating Article I, Section 10 of the United States Constitution; (5) ex post impairment of contract violating Article I, Section 16 of the 1970 Illinois Constitution; (6) violations of the due process protections of Article 1, Section 2 of the 1970 Illinois Constitution; (7) a violation of the Illinois Consumer Fraud Act; and (8) special legislation violating Article 4, Section 13 of the 1970 Illinois Constitution. (R. 46, 2d Am. Compl.) Currently before the Court are both the City's and the Funds' motions to dismiss the *Jacobson* complaint on various grounds. In deciding this motion, the Court will focus on the threshold jurisdictional issues.

## LEGAL STANDARDS

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). When considering a motion to dismiss, this Court views all facts alleged in the complaint, as well as any inferences reasonably drawn from those facts, in the light most favorable to the plaintiff. *Id.* We will grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993). In examining a motion to dismiss for lack of subject matter jurisdiction, the Court may also look beyond the complaint and consider other evidence. *Meridian v. Rail Prods. Corp.*

6

*v. Amsted Indus., Inc.*, No. 02 C 3708, 2002 WL 31103479, at *2 (N.D. Ill. Sept. 18, 2002).

## ANALYSIS

### I. *Rooker-Feldman* Doctrine

The Court must first address whether we can properly exercise jurisdiction over

Plaintiffs' claims. Both the City and the Funds argue that Plaintiffs' claims are barred under the

*Rooker-Feldman* doctrine. The doctrine, which arises from the Supreme Court's decisions in

*Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923), and *District of Columbia Court of*

*Appeals v. Feldman*, 460 U.S. 462 (1983), prohibits federal court review of state court

judgments. Essentially, we must decide whether the plaintiffs seek to set aside a state court

judgment or whether they present independent claims. *Edwards v. Ill. Bd. of Admissions to the*

*Bar*, 261 F.3d 723, 728 (7th Cir. 2001) (citation and quotations omitted). The federal plaintiffs'

claims are barred if their claimed injury resulted from the state court judgment. *Id.* at 729

(citations and quotations omitted). Thus, in cases where the doctrine applies, the federal

plaintiffs would have no complaint but for the state court determinations. *Remer v. Burlington*

*Area Sch. Dist.*, 205 F.3d 990, 998 (7th Cir. 2000) (citations omitted). Moreover, the doctrine

bars not only those claims that result from the state court judgment, but also those claims that are

"inextricably intertwined" with it, or, in other words, those claims that call upon the federal court

to review the state court judgment. *Edwards*, 261 F.3d at 729. Claims can be inextricably

intertwined with the state court judgment, however, only if the plaintiff reasonably could have

raised the claims in the state court proceedings. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548,

558 (7th Cir. 1999).

7

In this case and at this stage of the proceedings, we decline to bar Plaintiffs' claims in their entirety under the *Rooker-Feldman* doctrine. Plaintiffs should be advised, however, that we have strong doubts as to the propriety of this Court's jurisdiction to the extent that their claims challenge the *Korshak* settlement. For purposes of the *Rooker-Feldman* doctrine, a state court approved settlement agreement is a judgment that should not be reviewed by this Court. *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 528 n.5 (7th Cir. 2000). The *Korshak* settlement provided for the City's obligations to pay the annuitants' coverage and for the support of Pension Code legislation, Public Act 86-273, which provided for a ten-year settlement period expiring in June 1998. The *Jacobson* plaintiffs challenge the settlement and ensuing legislation and allege injuries (*e.g.* rate increases, coverage denials) arising from the settlement agreement. In other words, but for the state court judgment in *Korshak*—in this case, the settlement agreement—the *Jacobson* plaintiffs' claims would narrow significantly. *Remer*, 205 F.3d at 998.

Plaintiffs' federal claims, Counts I and IV, the basis for this Court's jurisdiction, can be read, however, to include injuries arising not only from the *Korshak* settlement and Public Act 86-273 but from plan changes in 1998 and 2001 that did not constitute part of the *Korshak* settlement. Defendants cannot argue that these latter claims are "inextricably intertwined" with the state court judgment, as these claims could not have possibly been brought in the state proceeding. *Long*, 182 F.3d at 558. Therefore, we will not bar the *Jacobson* Plaintiffs' claims in their entirety, but if called upon to review Plaintiffs' claims in the future, we will be mindful of the impropriety of lower federal court review of state court judgments.

## II. Abstention

As an alternative to dismissal under the *Rooker-Feldman* doctrine, Defendants argue that the Court should stay this action in deference to the pending state proceeding. Defendants argue for a stay under two abstention doctrines: *Colorado River* abstention to further wise judicial administration, *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and *Pullman* abstention to avoid unnecessary constitutional adjudication, *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941).

Abstention under the *Colorado River* doctrine and the conservation of judicial resources is appropriate when a party is contemporaneously litigating parallel suits in two forums. *Colo. River*, 424 U.S. at 817; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). *See also Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546 (7th Cir. 1997). A two-part test determines the propriety of abstention under the doctrine. First, the two pending suits must be parallel, which in this case means that substantially the same parties are contemporaneously litigating substantially the same issues in two forums. *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992) (citations omitted). Second, if the suits are parallel, the district court must consider ten factors in deciding whether to abstain in favor of a pending state court action. "No one factor is necessarily determinative." *Colo. River*, 424 U.S. at 818. The Court should carefully consider both the obligation to exercise jurisdiction and the combination of factors counseling against the exercise of jurisdiction. *Id.* at 818-819. We must consider: (1) whether the first court assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the

9

concurrent forum. *Id.* at 818. Applying the *Colorado River* test in the arbitration context, the *Moses H. Cone* court added two factors to the test, including: (5) whether state or federal law provides the rule of decision; and (6) whether the state court proceeding adequately protects the federal plaintiff's rights. *Moses H. Cone*, 460 U.S. at 23-27. Furthermore, the Seventh Circuit has gleaned four additional factors from considerations noted in Supreme Court cases: (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Sverdrup*, 125 F.3d at 550.

Applying the first step of the *Colorado River* test, we find that the state suit and the federal suit are parallel actions as defined by Seventh Circuit caselaw. *See Caminiti*, 962 F.2d at 700. In other words, substantially the same parties are contemporaneously litigating substantially the same issues in both state and federal court. *Id.* In the state action, the parties include the class of annuitants who were participants on December 31, 1987, the City, the Policemen's Fund, the Firemen's Fund, the Municipal Employees' Fund and the Laborers' Fund as well as various officials. (*See* R. 42, App., Ex. A, Am. Compl. at 4-5.) The City and the same four funds are also party to the federal action, along with a class of annuitants defined as those who retired or whose benefits vested after December 31, 1987 but on or before August 23, 1989.

The differences between the parties to the two actions does not preclude a determination that the two actions are parallel. First, the presence of the additional individual defendants in the state action does not affect our determination. *See AAR Int'l, Inc., Nimelias Enters. S.A.,* 250 F.3d 510, 518 (7th Cir. 2001) ("mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel"). Second, although the *Jacobson*

class members technically are not parties to the state court action, such identity is not required if their interests are similar to or represented by the *Korshak* class members. *See Admin. Comm. v. Gauf*, 188 F.3d 767, 772 (7th Cir. 1999); *see also Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998). Both the *Jacobson* and *Korshak* plaintiffs, distinguished by the date of their retirement, represent or seek to represent classes of annuitants in the City's health care plans, who allege rights to a fixed-rate subsidized healthcare plan. Beyond the different retirement dates, the *Jacobson* plaintiffs have not shown how their interests differ from the *Korshak* plaintiffs. Indeed, when the *Jacobson* plaintiffs were denied intervention in the *Korshak* litigation, the Appellate Court drew an identical conclusion when it noted that "[t]he proposed intervenors have failed to demonstrate how their interests are any different from the annuitants who have already intervened in this matter." *City of Chi. v. Korshak*, No. 1-98-3465 and 1-98-3667 (Ill. App. Ct. June 15, 2000). Thus, the parties in the state and federal actions are substantially similar for purposes of the *Colorado River* doctrine.

Moreover, substantially the same issues are being litigated in both *Korshak* and *Jacobson*. Plaintiffs' claims in both suits are premised on the plaintiffs' claimed right to subsidized healthcare benefits at a fixed rate for life. In both suits, the plaintiffs challenge Pension Code legislation and seek to enforce their alleged rights by claiming Fourteenth Amendment violations as well as the equivalent state constitutional violation, impairment of contract under the United States and Illinois Constitutions, ex post facto impairment of contract under the Illinois Constitution, special legislation in violation of the Illinois Constitution, common law breach of contract and a violation of the Illinois Consumer Fraud Act. Therefore, the two actions are parallel, for purposes of the first prong of the *Colorado River* test.

11

Having found that the state and federal actions are parallel, the Court must carefully consider the obligation to exercise jurisdiction along with the factors that militate in favor of abstention. Four of the factors—the first, second, eighth and ninth—are neutral and do not affect our analysis. First, the state court did not assume jurisdiction over property which would have conferred exclusive jurisdiction on the state court. Second, the two forums, both in Cook County, are equally convenient to the parties. Third, both the state and federal court could exercise jurisdiction over the *Jacobson* complaint. Fourth, the availability of removal is not at issue because the time period during which Defendants could have removed from state court has expired. 28 U.S.C. § 1446(b).

Analysis of the remaining six factors, however, strongly counsels abstention in favor of the *Korshak* litigation in Circuit Court. First, the state court obtained jurisdiction over annuitants' claims long before this Court. The *Korshak* litigation has a long history in state court, commencing in 1987, with a bench trial in 1988, a settlement in 1988, a ten-year settlement period between 1988 and 1998, followed by renewed litigation in state court beginning in 1998. The current federal action, on the other hand, commenced in 2001. Second, the state litigation has progressed further than the federal litigation. While this case is in its nascent stages, *Korshak* was set for a hearing on May 30, 2002 on the parties' cross-motions for summary judgment. Third, most of the *Jacobson* plaintiffs' claims arise under state law, not federal law. Six of the Jacobson plaintiffs' eight counts are claims under Illinois common law, the Illinois Constitution or Illinois statutes. Moreover, although the two remaining counts—a § 1983 count for deprivation of property rights and due process rights under the Fourteenth Amendment and a constitutional claim for impairment of contract—are federal counts, the

12

resolution of these claims can be made only with reference to state contract and property law.

Fourth, abstaining will avoid piecemeal litigation. Continuing to adjudicate this action would constitute a waste of judicial resources given that another class of annuitants seeks substantially the same relief in state court. The exercise of our jurisdiction potentially could lead to inconsistent judgments, if annuitants, depending on whether they retired before or after December 31, 1987, were deemed to possess different rights. *See Caminiti*, 962 F.2d at 701 (avoiding piecemeal litigation involves avoiding "duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue"). Fifth, the Court has no reason to doubt that the federal plaintiffs' rights will be protected in the state court proceeding. In fact, although the Appellate Court in 2000 ruled that the Circuit Court did not improperly deny the post-1987 annuitants intervention in *Korshak*, the Circuit Court in 2001 nevertheless granted the *Korshak* plaintiffs leave to file an amended complaint that would have included the putative *Jacobson* class. Impatient with the Circuit Court's refusal to extend automatically the scope of the temporary restraining order to include the post-1987 annuitants, the *Korshak* plaintiffs withdrew their motion to amend the complaint. Instead, the putative class members seek relief in this Court, which leads to the final factor—the vexatious or contrived nature of the federal claim. We question why Plaintiffs filed the instant suit rather than joining the state action, and suspect that Plaintiffs might have been improperly seeking another forum in which to test their claims.

Accordingly, the balance of factors strongly weighs in favor of abstention. Both this Court and the Circuit Court have been asked to determine the annuitants' rights to fixed-rate subsidized healthcare plans. "Wise judicial administration" counsels the Court to abstain from exercising jurisdiction in this case. *Colorado River*, 424 U.S. at 817. The state court's

13

involvement in the *Korshak* litigation commenced at a much earlier date and has progressed to a more mature stage in the litigation process. Additionally, the dispute involves many questions of state law, which are more properly decided by the state court.[1] Finally, this Court reiterates its long held view that the federal courts do not possess capabilities superior to those of our state court colleagues. *See, e.g., CIGNA Healthcare of St. Louis, Inc., et al., v. Kaiser, et al.,* 181 F. Supp. 2d (N.D. Ill. 2002), *aff'd,* 294 F.3d 849 (7th Cir. 2002). This Court commends its state court colleagues for their diligent handling of this complex litigation. Therefore, we abstain from exercising jurisdiction under the *Colorado River* doctrine.

## CONCLUSION

For the foregoing reasons, the Court abstains from exercising jurisdiction over Plaintiffs' claims and stays this action pending the resolution of the *Korshak* litigation. Therefore, Defendants' motions to dismiss are denied. (R. 41-1; 47-1.) In the event that the stay is lifted, however, and this Court is called upon to exercise jurisdiction, the parties should limit their claims so that this Court avoids review of the *Korshak* settlement in violation of the *Rooker-Feldman* doctrine.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: November 21, 2002**

---

[1] The Court notes that the *Pullman* doctrine provides an additional ground for abstention. *R.R. Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496 (1941). The doctrine seeks to avoid unnecessary constitutional litigation in the federal courts. In this case, the resolution of Plaintiffs' federal constitutional claims might be obviated if the state court rules that the annuitants have no property or contract rights in a fixed-rate subsidized healthcare plan. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716-17 (1996). Therefore, abstention is further supported under the *Pullman* doctrine.

14